## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**ARMOND DUHON #7722958**                    **CASE NO.  6:20-CV-00721 SEC P**

**VERSUS**                                              **JUDGE ROBERT R. SUMMERHAYS**

**TIM HOOPER**                                   **MAGISTRATE JUDGE WHITEHURST**

## REPORT AND RECOMMENDATION

Pro se petitioner Armond Duhon, a prisoner in the custody of Louisiana's Department of Corrections, filed the instant petition for writ of habeas corpus, pursuant to 28 U.S.C. §2254, on June 26, 2020.  Rec. Doc. 1.  Petitioner attacks his 2017 conviction for racketeering, money laundering and theft and the sentence imposed by the Sixteenth Judicial District Court, St. Mary Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### I.    Background

#### a.  Factual Background

The factual background in the matter before this Court was set forth, in detail, by the Louisiana First Circuit Court of Appeal on direct appeal, as follows:

> Detective Travis Trigg of the Morgan City Police Department ("MCPD") began investigating theft complaints after a representative of Capital Management Consultants, Inc. ("CMCI"),

a real estate investment and holding company for art galleries and apartment buildings, advised the MCPD of suspicious transactions. At the time of the complaint, Karen Duhon ("Mrs. Duhon") was the bookkeeper and Donna Sue Peveto ("Peveto") was the overseer of art inventory at CMCI. After questioning witnesses regarding the complaint, Detective Trigg executed a search warrant at CMCI, including Mrs. Duhon's office, and at the Duhon residence. In executing the warrants, Detective Trigg seized various financial documents, ledgers, and a large amount of lottery tickets and other gambling related items. Detective Trigg further issued search warrants for casino records, and the bank records of the defendant, Mrs. Duhon, Peveto, and A-B-C Siding Company of Morgan City, Inc. ("A-B-C Siding"), a general contracting corporation owned by the defendant. The search warrants for bank records were specifically issued at MidSouth Bank, Whitney Bank, and Morgan City Bank, requesting records from 1999 through 2010, initially, and thereafter, warrants issued requesting records from 2011 through 2014. Detective Trigg further received records from Leah Guarisco McGriff (one of the members of the Guarisco family that owned CMCI) that were recovered from computers at CMCI.

Based on his review of the documents and questioning of witnesses, Detective Trigg noted the following patterns of activity. In multiple instances, the amounts identified by Mrs. Duhon in the bank ledger differed from the amount written on the corresponding checks. Specifically, Detective Trigg noted that Mrs. Duhon would receive checks for around $14,000.00 and $9,500.00 that, under CMCI records, were documented as $1,000.00 or less. Detective Trigg testified that although the defendant was not an employee of CMCI, he and Mrs. Duhon opened a joint checking account at MidSouth Bank and ordered checks that indicated that the account belonged to CMCI. Detective Trigg testified that it was his understanding that Scott Tucker, ("Tucker") the owner of Nelson-Tucker, L.L.C. ("Nelson-Tucker"), secretary and shareholder of CMCI, and president of Hellenic, L.L.C. (a separate Guarisco holding), was authorized to write checks on CMCI's actual bank account. Detective Trigg reviewed W-2 statements filed by Mrs. Duhon and CMCI, signed by Mrs. Duhon, and Mrs. Duhon's bank records from 1999 through 2013. Detective Trigg noted that the income reported on the

2

W-2 forms was far less than the amount of money that was diverted from CMCI to the Duhons.

On July 7, 2010, a check for $50,000.00 was written to Mrs. Duhon out of CMCI's bank account. Further, there was a corresponding deposit of that amount into Mrs. Duhon's personal Whitney Bank account. The following day, July 8, 2010, the defendant purchased a 2010 Toyota Sequoia in his name, and in accordance with the title and registration, with Mrs. Duhon's personal check in the amount of $40,499.50. The Toyota Sequoia was later sold back to Courtesy Toyota for $26,000.00, in the form of a cashier's check made out to the defendant. Three years later, on October 17, 2013, the defendant similarly purchased a 2014 Ford-250 in his name, as indicated by the title and registration, with a check from his A-B-C Siding MidSouth Bank checking account. On the day the check was written, the A-B-C Siding account did not have sufficient funds to cover the check. The following day, October 18, 2013, a MidSouth Bank check for $30,000.00 made payable to "A-B-C Siding Co" was signed by Mrs. Duhon and deposited into the defendant's A-B-C Siding MidSouth Bank checking account. The check bore the following names as the payor: Capital Management Consultants, Inc., Armond Duhon, and Karen Duhon.

In February of 2014, the Guarisco family hired Mark Munson, a certified public accountant (CPA), to conduct a forensic analysis for CMCI. Munson testified at trial as an expert, and as a certified public accountant with an emphasis in audit and reviews and compilations. Munson was initially retained by the Guariscos after Tucker died to prepare the 2013 corporation tax returns. When he attempted to acquire the year-end working trial balance and general ledger, he learned that they were prepared by Tucker and Mrs. Duhon. Along with Laura Guarisco, Munson made several requests to Mrs. Duhon to obtain the information and received excuses in response for up to six weeks. Munson ultimately received a package from Mrs. Duhon, however, it did not contain the necessary financial documents, such as the working trial balance and the general ledger.

In late February to early March of 2014, Munson met with some of the Guarisco siblings in Morgan City, and they searched Mrs. Duhon's office. They found the bank statements, check register, and

3

documentation showing that she took steps to begin the bookkeeping for 2013, but did not actually make any significant progress. Munson took the information back to his office and prepared the books for 2013. He noted that the amount of income that Mrs. Duhon told Laura she was making did not coincide with the records. He stated that in comparing bank statements and check stubs, it became apparent that checks were being written for one amount and clearing the bank for substantially more. He noted that the amount reflected in the check register was often significantly less than the amount that cleared the bank for the corresponding check.

The Guariscos asked Munson to examine the books for previous years to detect other discrepancies, and Munson prepared a written analysis of the checks and the discrepancies, showing how unauthorized funds were concealed. He noted patterns such as Mrs. Duhon writing herself a check and recording it as $1,000.00, but the check clearing for $14,000.00. Such discrepancies appeared for every month for the four years that Munson analyzed, from 2010 to 2013. Munson further noted that there was also a pattern of checks written to Peveto, which normally were written for a smaller amount between $100.00 and $400.00, but would clear for $9,000.00 plus the smaller amount. After completing his analysis, as stated in his report, Munson concluded that checks written to Mrs. Duhon and Peveto during the four-year period that cleared in excess of the amounts recorded on the book of the company were in the amount of $273,100.00 for 2010, $289,500.00 for 2011, $254,000.00 for 2012, and $249,000.00 for 2013. Munson further provided a detailed schedule of each of the understated and overstated checks comprising the stated totals for each year. Munson determined where the excess amount of the checks were recorded on the books by detecting the checks on the books that were recorded for significantly more than they actually cleared the bank. The total excess amount of the checks, which had a higher recording than their clearance amount, equaled the clearance total for the checks written to Mrs. Duhon and Peveto.

Munson further determined that during the same time period, working trial balance documents prepared by Tucker and Mrs. Duhon included journal entries that further concealed the transactions. He testified that in 2010, journal entries were made to

write off accounts receivable charged to Tucker in the amount of $123,085.00 and a loan to Mrs. Duhon in the amount of $50,000.00 that was written off as an expense in the books. Additional loans to Mrs. Duhon were written off in 2011 in the amount of $22,000.00. Another tactic of concealing the overstated amounts included recording checks that never cleared the bank. For example, in 2010, the total for recorded checks that did not clear the bank was $273,100.00. Checks written to Mrs. Duhon were traced to a joint bank account with the defendant. The checks were deposited either the same day or the day following the written date reflected on the check. For nearly every month, there was, in addition, a transfer of funds from the joint account (one that includes CMCI's company name) into the A-B-C Siding account.

He examined CMCI banking transactions signed by Mrs. Duhon and checks purportedly signed by Tucker. As to the CMCI-identified checks written on the Duhon account, Munson testified that based on his understanding, CMCI was not on the bank statement itself, although its name was on checks and deposit slips. As he was familiar with Tucker's program and style of preparation, Munson noted that, in his opinion, the working trial balance documents (retrieved from Tucker's computer and a file cabinet at Hellenic) were prepared by Tucker. He concluded that the monthly cash receipts, disbursement journal, and the general ledger trial balance, which were all maintained on Mrs. Duhon's computer, were prepared by Mrs. Duhon. In addition to the electronic items, Mrs. Duhon further kept a manual check register in her office. Munson referred the Guariscos to an accounting firm to conduct a forensic fraud analysis. Subsequently, a forensic analysis conducted by Joan Martin, the CPA retained by the Guariscos, further supported the charges of racketeering, money laundering, and theft in the instant case.

### b.  Procedural Background

Armond Duhon was charged by bill of information with one count of racketeering, a violation of LSA-R.S. 15:1353, two counts of money laundering

valued at $20,000.00 or more, but less than $100,000.00, violations of LSA-R.S. 14:230(E)(3), and 221 counts of theft valued at $1,500.00 or more, violations of LSA-R.S. 14:67(B)(1). *See State v. Duhon*, 2018-593, 270 So.3d 597, 604 (La. App. 1 Cir., 12/28/18). He pled not guilty on all counts. Duhon's motion to waive trial by jury was granted by the trial court and, following a bench trial, he was found guilty of the responsive offense of theft valued at $500.00 or more, but less than a value of $1,500.00, on counts 31, 516, 570, 600, 638, 656, 657, 660, 665, 669, 675, 676, 687, 690, and 761, violations of LSA-R.S. 14:67(B)(2) and guilty as charged on all of the remaining 209 counts. The trial court denied his motion for a new trial.

On count 1 (racketeering), Petitioner was sentenced to twenty years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. On count 565 (money laundering), he was sentenced to fifteen years imprisonment at hard labor and on count 754 (money laundering), he was sentenced to twelve years imprisonment at hard labor. On the fifteen counts of theft valued at $500.00 or more, but less than $1,500.00, he was sentenced to six months in parish jail on each count, to be served concurrently. Finally, on the 206 remaining counts of theft, he was sentenced to eight years imprisonment at hard labor, to be served concurrently with the sentences imposed on counts 1, 565 and 754. Petitioner was also ordered to pay $2,328,000.00 restitution to the victims and $200,000.00 to the

D.A.'s office for prosecution fees. The trial court denied Petitioner's oral motion to reconsider sentence.

Petitioner timely filed a direct appeal in the First Circuit Court of Appeals, raising the following issues: (1) the trial court erred in conducting a judge trial without having a valid waiver of the right to a jury that met the requirements of Louisiana Code of Criminal Procedure article 780; (2) the trial court erred in allowing the State to sever the co-defendant on the day of trial to thwart the presentation of the defense, and compounded the error by denying the request for a continuance and allowing the State to elect to try the petitioner first and immediately; (3) the convictions are invalid for all counts of misdemeanor theft plus the counts of felony theft that occurred before November 9, 2012, and one count of money laundering that occurred before November 9, 2010, which prescribed before the bill of information was filed; (4) the trial court erred in allowing the testimony of a purported handwriting expert who had no factual basis for rendering an opinion; (5) the trial court erred in allowing bank records into evidence without the proper foundation and in violation of the right to confrontation; (6) the State failed to prove, beyond a reasonable doubt, that [the defendant] engaged in racketeering, money laundering or theft; and (7) the trial court erred in imposing unconstitutionally excessive sentences on the [sixty-three-year-old] first offender and denying his motion to reconsider. *State v. Duhon*, 270 So.3d at 605.

On December 28, 2018, the First Circuit reversed and rendered modified convictions on counts 34, 39, 49, 57, 69, 73, 84, and 89, reversed the convictions on counts 87 and 751, and affirmed the remaining convictions. *Id.* As to the sentences, they reversed the sentences on counts 87 and 751, vacated the sentence on count 1 remanded for resentencing on count 1, and affirmed the remaining sentences. *Id.*

Petitioner applied for writs of certiorari in the Louisiana Supreme Court, which was denied May 28, 2019. *State v. Duhon*, 2019-0124 (La. 5/28/19), 273 So. 3d 315. The Supreme Court subsequently denied Petitioner's Motion for Rehearing on September 24, 2019. *State v. Duhon*, 2019-0124 (La. 9/24/19), 279 So. 3d 932.

Petitioner did not apply for certiorari in the United States Supreme Court (rec. doc. 1, p.3, ¶ 9(h)), nor did he seek post-conviction relief (*id.* at ¶ 10).

The instant petition, filed on June 26, 2020, raises the following claims: (1) improper jury waiver; (2) severance used to deny defense; (3) bank records are inadmissible hearsay; and (4) insufficiency of evidence. Rec. Doc. 1. The State has filed a response (rec. doc. 25) and the matter is now ripe for review.

## I.   Law and Analysis

### a.  Standard of Review - 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court may consider habeas claims. After the state courts have "adjudicated the merits" of

an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

To overcome AEDPA's relitigation bar, a state prisoner must shoehorn his claim into one of its narrow exceptions. *Langley v. Prince*, 962 F.3d 145, 155 (5th Cir. 2019). As relevant here, he must show the state court's adjudication of the claim "resulted in a decision that was [1] contrary to, or [2] involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id*.; 28 U.S.C. § 2254(d)(1).

The first exception to the relitigation bar—the "contrary to" prong—is generally regarded as the narrower of the two. *Id*. A state-court decision is "contrary to" clearly established federal law only if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if" it resolves "a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id*. (*citing Terry Williams v. Taylor*, 529 U.S. 362, 413 (2000).

The other exception to § 2254(d)(1)'s relitigation bar is the "unreasonable application" prong, which is almost equally unforgiving. *Id*. at 156. The Supreme Court has repeatedly held that it is not enough to show the state court was wrong. *Id.; see also*, *Renico v. Lett*, 559 U.S. 766, 773 (2010) ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal

9

law erroneously or incorrectly." (quotation omitted)); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").   Rather, the relitigation bar forecloses relief unless the prisoner can show the state court was so wrong that the error was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id. (citing Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (per curiam) (quotation omitted).   In other words, the unreasonable-application exception asks whether it is "beyond the realm of possibility that a fairminded jurist could" agree with the state court. *Id.* (*citing Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016) (per curiam); see *also Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (per curiam) (asking "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court" (quotation omitted)).

Overcoming AEDPA's relitigation bar is necessary, but not sufficient, to win habeas relief. Even after overcoming the bar, the prisoner still must "show, on de novo review, that [he is] 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Id. (citing Salts v. Epps*, 676 F.3d 468, 480 (5th Cir. 2012) (quoting 28 U.S.C. § 2254(a)); *see also Berghuis v. Thompkins*, 560 U.S. 370, 390

(2010) ("[A] habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review [under] § 2254(a).").

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### b. Claims

#### i. Claim 1

Petitioner claims that he was "never given a full colloquy with judge or defense counsel, commemorated in an affidavit or minute entry, before the right [to jury] was waived, to determine his ability to understand what he was giving up." Rec. Doc. 4, p. 5. When he raised this issue on direct review, the Louisiana First Circuit held that there was adequate evidence to demonstrate a valid jury trial waiver. The Court reasoned that while the record did not contain an on-the-record colloquy, after the defense counsel filed the motion for new trial on the issue, Duhon was afforded a hearing wherein he declined to raise the issue and did not contest statements by the prosecutor and trial court indicating that there was a knowing and intelligent waiver. *Id.* at 625. The Court noted that although Duhon was classified as a first felony offender, this was not his first criminal offense and, thus, he had prior experience as an accused in a criminal prosecution. *Id.* It also found that a careful review of the record, including the language of the written motion to waive

trial by jury, the March 13, 2017 minute entry indicating that the trial court and defense attorney concurred that the matter had been taken care of, the lack of an objection by Duhon in proceeding to trial by judge, and the uncontroverted assertions by the State and trial court at the hearing on the motion for new trial regarding Duhon's knowing and intelligent waiver of his right to a trial by jury, led the state appellate court to the "rational conclusion" that Duhon, with benefit of counsel, voluntarily and intelligently waived his Sixth Amendment right to trial by jury.

On habeas review, a state court's determination that a petitioner's jury trial waiver was valid is a mixed question of law and fact. *Pierre v. Leger*, 495 F. App'x 403, 405 (5th Cir. 2012). Thus, the state court's mixed findings of law and fact are entitled to deference, unless the state court's decision was contrary to or involved an unreasonable application of clearly established Supreme Court precedent. *Pierre*, 495 F. App'x at 405.

Significantly, in this case, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). Applying this deferential standard of review under the AEDPA, Duhon has not shown that the state court's determination rests on

an objectively unreasonable determination of clearly established federal law. He is not entitled to habeas corpus relief on this claim.

### ii.  Claim 2

Petitioner next claims that severing the charges in his case from his wife/co-defendant's case had the effect of denying him a defense.   Specifically, he states:

> Armond Duhon's wife was his only connection to CMCI. The bill of information in this case was amended three times, adding charges and removing and adding defendants. Two of the four original co-defendants died, and Armond was prepared to go to trial with his wife, the sole remaining co-defendant.
>
> In a joint trial, Karen Duhon would have testified to exculpate him. He was to follow her lead in cross examination. By allowing the State to sever on trial date; he could not prepare for alternate proof while denied continuance.

Rec. Doc. 1, p. 7.

The Louisiana First Circuit Court of Appeal addressed this issue on direct appeal, ultimately finding that Duhon was not prejudiced by the severance. *Duhon*, 270 So.3d at 629.   The court relied upon Article V, § 26(B) of the Louisiana Constitution, which provides that the district attorney controls the administration of criminal prosecutions. Further, it cited to Louisiana Code of Criminal Procedure, Article 61, which states that "[s]ubject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom,

13

when, and how he shall prosecute." Finally, Louisiana Code of Criminal Procedure, Article 704 was cited, which provides that "[J]ointly indicted defendants shall be tried jointly unless: (1) The state elects to try them separately; or (2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance." Article 704 requires the trial court to conduct a hearing on a motion to sever only when the defendant moves for the severance. The granting or denial of a motion for severance rests in the sound discretion of the trial judge and, absent a showing of clear abuse, his ruling will not be reversed. *Duhon*, 270 So.3d at 627 (citing *State v. Williams*, 416 So. 2d 914, 916 (La. 1982)).

The First Circuit held:

> In considering the defendant's claim, the court found no error in the State's action in light of LSA-C.Cr.P. art. 704 specifically allowing the State to sever the trials of jointly indicted defendants and LSA-C.Cr.P. art. 61. *State v. Lawrence*, 925 So. 2d at 741. Herein, although the defendant objected to the severance, the record does not permit us to conclude that the State engaged in misconduct by electing to sever the cases and try the defendant first. Further, the defendant in this case has failed to meet the burden of showing that Mrs. Duhon would have testified on his behalf. Moreover, the defendant has failed to state the substance of any testimony by Mrs. Duhon that would have been presented and would have further had an exculpatory effect. After reviewing the record, we do not find any prejudice to defendant by the granting of the severance. Thus, we find no abuse of discretion. This assignment of error also lacks merit.

*Duhon*, 270 So.3d at 629.

14

Duhon's claim does not warrant federal habeas corpus relief. As noted, where, as here, the state courts have denied his claim on the merits, a petitioner must show that the decision denying his claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). That dooms petitioner's claim, as the petitioner has neither rebutted the trial court's factual findings by clear and convincing evidence. 28 U.S.C. §2254(e)(1), nor has he explained why the Louisiana First Circuit's decision is an unreasonable application of federal law. Particularly, the State argues, and this Court agrees, that there is nothing to suggest that this decision is contrary to any federal appellate jurisprudence, much less a United States Supreme Court decision as required by 28 U.S.C. §2254(d).

### iii.  Claim 3

Petitioner's third claim is that "[b]ank records are inadmissible hearsay." Rec. Doc. 1, p. 8.  Specifically, Duhon alleges that:

> Joan Martin, the forensic accountant (hired by the Guarisco) family, did not conduct a full audit of CMCI. Ms. Martin and the State relied on CMCI bank records given her by the Guarisco family. The family continued to give her documents even during trial. No representative from the banks were presented to lay foundation of records or banking practices.

*Id*.

What is and is not hearsay evidence in a state trial is governed by the relevant state law on evidence.  *Cupris v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994).  A state

court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair (in which case sustaining the conviction would violate Petitioner's Fourteenth Amendment right to due process). *Id*. (citing *Pemberton v. Collins*, 991 F.2d 1218, 1226 (5th Cir.) (citing *Johnson v. Blackburn*, 778 F.2d 1044, 1050 (5th Cir.1985)), cert. denied, ⸺ U.S. ⸺, 114 S.Ct. 637, 126 L.Ed.2d 596 (1993)).  The Court finds that the petitioner's complaint, as iterated in his federal habeas petition, is not a Confrontation Clause or Due Process complaint, but is a complaint as to authenticity and/or foundation, an issue which falls squarely within the Louisiana Code of Evidence and, accordingly, not a cognizable habeas claim.

### iv.  Clam 4

Finally, Duhon argues that he was neither a "principal" or a "mastermind," as he was classified by the trial court.  He alleges that while "his wife, to whom he has been married since 1974 was, and is, trained and educated as an accountant," he has "neither the academic know-how, nor the fiduciary relation to CMCI, to warrant a conviction on these charges."  Rec. Doc. 4, p. 10.  "Karen Duhon took care of all business, accounting, and banking in the household."  *Id*.

After reviewing the evidence adduced at trial, the First Circuit Court of Appeal concluded that the trial court could have reasonably concluded that the State

proved the existence of a separate enterprise for the purposes of racketeering. The court held:

> Mrs. Duhon was a CMCI employee, hired to handle bookkeeping. Although the defendant did not have direct access to CMCI funds, the evidence showed that he had joint control of the bank account used to funnel the funds for unauthorized, non-company personal use. The trier of fact could have reasonably concluded that the evidence showed a significantly large number of acts of racketeering committed by the participants in the enterprise, including the defendant. The evidence further showed that the defendant commingled proceeds from legal transactions with the proceeds from the illegal transactions. Specifically, funds were further transferred into the defendant's business account purportedly set up to deposit other funds gained through his general contracting incorporation.
>
> Regarding the two convictions of money laundering, we find that the trial judge could have reasonably concluded that the State proved that the defendant was a principal to Mrs. Duhon's actions in conducting and facilitating financial transactions involving proceeds derived from CMCI in an unauthorized manner, designed to conceal the purpose or true use of the proceeds. The evidence shows that the defendant used portions of the funneled funds to purchase two vehicles in this case. In addition to testimony by Martin indicating that she was able to trace the funds used to purchase the vehicles to unauthorized, concealed transactions involving CMCI funds, the State further introduced statements by the defendant that were probative of his intent, and (on count 754) evidence that the funds were deposited into the bank account of a legitimate business.
>
> As to the 221 counts of theft, the evidence on the bulk of the counts showed that the defendant participated in the misappropriation or taking of funds which belonged to another, CMCI, without the consent of the other to the misappropriation or taking, by means of fraudulent conduct, practices, and representations. Regarding the bank accounts used to transfer the CMCI funds that were taken through a pattern of hidden transactions, spanning over a long time period, the defendant was the joint owner of the personal bank

17

accounts, and the owner of the business account. There was no evidence that these funds were returned to CMCI.

In reviewing the evidence, as to the racketeering conviction on count one, the money laundering convictions on counts 565 and 754, and the bulk of the theft convictions, we cannot say that the judge's determination was irrational under the facts and circumstances presented. See *Ordodi*, 946 So.2d at 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the trier of fact. *State v. Calloway*, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). A court of appeal impinges on a fact finder's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law in accepting a hypothesis of innocence that was not unreasonably rejected by the fact finder. See *State v. Mire*, 2014-2295 (La. 1/27/16), 269 So.3d 698, 700–01, 2016 WL 314814, *2 (per curiam). Based on our careful review of the record, we are convinced that any rational trier of fact, viewing the evidence presented at trial in the light most favorable to the State, could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of the offenses of racketeering, money laundering, and theft.

However, the record does not support the theft convictions on counts 34, 39, 49, 57, 69, 73, 84, 87, 89, and 751. Specifically, the trial court failed to reduce the following additional counts for which the evidence did not support a conviction of theft valued at $1,500.00 or more, but instead supported convictions of theft valued at $500.00 or more: counts 34, 39, 49, 57, 69, 73, 84, and 89 (each consisting of a $500.00 check). At the time of those eight counts of theft (between January 5, 1999, and January 4, 2002), this grade of theft (valued at $500.00 or more) was a legislatively authorized verdict to a charge of theft. LSA-R.S. 14:67(B)(1) (prior to revision by 2010 La. Acts No. 585, § 1); LSA-C.Cr.P. art. 814(A)(26) (prior to revision by 2018 La. Acts No. 680, § 1 & 2014 La. Acts No. 255, § 2). Under these circumstances, a reviewing court, pursuant to LSA-C.Cr.P. art. 821(E), may modify the lower court's decision and render a responsive judgment of conviction. See LSA-R.S. 14:5; see also

> *State v. Schenck*, 513 So.2d 1159, 1165 (La. 1987); State v. Leblanc, 506 So.2d 1197, 1201 (La. 1987); *State v. Millien*, 2002-1006 (La. App. 1st Cir. 2/14/03), 845 So.2d 506, 512. Accordingly, we reverse and render modified convictions on counts 34, 39, 49, 57, 69, 73, 84, and 89, to theft valued at $500.00 or more. As previously noted, on counts 87 and 751, there is nothing in the record before us to indicate that the funds were deposited into an account of which the defendant had joint or sole control such that the defendant committed or was concerned in the commission of the thefts on those two counts. Accordingly, we are constrained to reverse the convictions and sentences on counts 87 and 751. We find no further merit in assignment of error number six.

*Duhon*, 270 So.3d at 619-21 (footnotes omitted).

*Jackson v. Virginia*, 443 U.S. 307 (1979), provides the appropriate United States Supreme Court standard for consideration of a claim of insufficient evidence. Under *Jackson*, a federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Id.* at 319*; Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008). Thus, to determine whether the commission of a crime is adequately supported by the record, the Court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U. S. at 324 n. 16).

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. See *McDaniel v. Brown*, 558 U.S. 120, 131 (2010)

(recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (quoting *Jackson*, 443 U.S. at 324).   Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the trier of fact. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); see *Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").   All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. W*eeks v. Scott,* 55 F.3d 1059, 1062 (5th Cir. 1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. *Perez*, 529 F.3d at 594.  Therefore, this Court must examine whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

This Court agrees with the State's assertion that a rational trier of fact, after viewing this evidence in the light most favorable to the prosecution, could easily have found that petitioner possessed the requisite knowledge or intent to be convicted of the charged offenses.  It is not for this Court, on federal habeas review, to reevaluate the credibility of witness statements or the weight of the evidence or to substitute its own judgment for the trier of fact, whose fact-finding must be given deference.  Considering the evidence in the light most favorable to the prosecution, it was rational and reasonable for the trial court to have found that the essential elements of the charged offenses were proven beyond a reasonable doubt.  As the Court finds that the state courts' denial of relief was not contrary to, or an unreasonable application of, United States Supreme Court precedent, petitioner is not entitled to relief on this claim.

## II.    Conclusion and Recommendation

For the foregoing reasons,

**IT IS RECOMMENDED THAT** the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2).

A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

    In Chambers, Lafayette, Louisiana on August 23, 2021.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**